(No. 46002.—

DONALD W. POWELL *et al.*, Appellees, v. NOLAN B. JONES *et al.*, Appellants.

*Opinion filed December 14, 1973.*

KLUCZYNSKI, J., specially concurring.

John W. Russell, of Carlinville, for appellants.

William S. Hanley, of Sorling, Catron and Hardin, of Springfield, for appellees.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

This appeal comes to us on a direct, expedited basis from a July 7 judgment of the circuit court of Sangamon County entered in a class action for declaratory judgment and injunctive relief initiated by certain named plaintiffs on behalf of themselves and some 1,000 other State employees who had received layoff notices. No question is raised concerning the validity of the class action. Plaintiffs in counts I and II are State highway maintenance section supervisors, highway maintenance foremen, highway maintenance men, highway maintenance workers and highway maintenance equipment operators, and count III of their complaint purports to include all certified employees of the State of Illinois whose employment was "terminated" subsequent to June 1, 1973. Defendants are Nolan B. Jones, Director of the Department of Personnel of the State of Illinois, George W. Lindberg, Comptroller of this State, and Langhorne Bond, Secretary of the Department of Transportation.

Plaintiffs filed their original complaint on June 27, and a temporary restraining order was entered on June 28. An amended but substantially similar complaint was filed and an amended order entered on June 29. The substance of both orders operated to prohibit defendants from either terminating plaintiffs' employment or undertaking any action to reconsider the layoff of any member of the class. Further hearings were held, and on July 7 a permanent injunction order was entered continuing these prohibitions.

The named plaintiffs, and all members of the class they represent, are civil service employees of the State of Illinois certified by the Director of Personnel as having been appointed and employed in accordance with the Personnel Code of this State (Ill. Rev. Stat. 1971, ch. 127, par. 63b101 *et seq.*) and rules adopted pursuant thereto. Each received, subsequent to June 1, 1973, a notice

containing various statements of which the following are stipulated to be representative: "Layoff due to reduction in funds resulting in material reorganization. Position to be abolished ***"; "Layoff due to budgetary restrictions necessitating a reduction in work force". Apparently the effective dates of all such layoffs were June 30, but in some instances time was extended for varying numbers of days in order to compensate for accrued vacation time. It was also stipulated that neither the Personnel Code nor the rules adopted pursuant thereto provide for a hearing prior to an employee layoff, and that, in the event of a wrongful layoff, "compensable damages" consist of loss of wages, loss of insurance benefits and loss of retirement and pension benefits.

Section 8 of the Personnel Code (par. 63b108) provides that the Director of Personnel may adopt rules for the purposes specified in the Code, and such rules, if not disapproved by the Civil Service Commission, shall have the force and effect of law. Section 8b.13 (par. 63b108b.13) provides for rules "For layoffs by reason of lack of funds or work, abolition of a position or material change in duties or organization, and for reemployment of employees so laid off, giving consideration in both layoffs and reemployment to performance record and seniority in service."

Plaintiffs' pleadings and arguments in the trial court and here make clear the single issue in this case: Is the totality of plaintiffs' interests in continued public employment sufficient to entitle them to a plenary prelayoff hearing absent any allegations that such layoffs have been improperly motivated? Passing references were made by plaintiffs in their arguments and briefs to the asserted absence of strict compliance with the rules governing layoffs. Those references, however, appear to have been intended to buttress plaintiffs' argument that certified employees are entitled to a prelayoff plenary hearing at which questions as to compliance with the layoff rules can

be presented and decided. No finding was requested of, nor made by, the trial court regarding violation of the rules, and no issue is presented here on that question. Rather, plaintiffs have consistently and vigorously urged that under the more recent decisions of the United States Supreme Court they are constitutionally entitled to remain in their employment unless that employment is terminated by a prior, plenary hearing in which plaintiffs may have counsel, the right to confront and cross-examine witnesses, present evidence, and receive a written decision from an impartial source. The trial court in large measure agreed and allowed a motion for summary judgment for plaintiffs after hearing extensive argument on an expedited basis. The judgment order entered by the trial court found the sum of plaintiffs' interests in continued employment, insurance and retirement benefits constituted a property interest protected by the due process clauses of both the Federal and State constitutions, that due process in these circumstances required a plenary hearing prior to layoff and that failure of the statute and rules to provide that hearing and the right to counsel, to present evidence, to confront and cross-examine adverse witnesses, and receive a written decision from an impartial officer rendered Departmental Rules 2–560 and 2–596, together with sections 8b.11 and 13 of the Personnel Code and article XII of the Civil Service Commission Rules unconstitutional insofar as they permit layoffs of certified employees without such hearing.

While we recognize the fact that the trial judge and counsel made a conscientious effort to fully analyze the relevant case law on an expedited basis, we disagree with the court's conclusions. In doing so, however, we empha-size the fact that plaintiffs specifically disclaimed any issue such as political motivation or infringement of freedom of speech in connection with the layoffs here involved, and that our holding here should not be interpreted as indicative of any opinion as to the validity of such layoffs

in cases wherein those issues may be raised. See, *e.g.,* *Keyishian v. Board of Regents (1967), 385 U.S. 589, 17 L. Ed. 2d 629, 87 S. Ct. 675; Mims v. Board of Education (7th Cir. 1972)(per curiam) No. 72–1007; Illinois State Employees Union v. Lewis (7th Cir. 1972), 473 F.2d 561, cert. denied (1973), 410 U.S. 942, 35 L. Ed. 2d 609, 93 S. Ct. 1370; Hostrop v. Board of Junior College District No. 515 (7th Cir. 1972), 471 F.2d 488; Juergensmeyer v. Bensinger (1972), 7 Ill. App. 3d 698; Chestnut v. Lodge (1966), 77 Ill. App. 2d 281.*

Recent years have witnessed substantial expansion of concepts of due process as applied to recipients of welfare assistance (*Goldberg v. Kelly (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011*), license holders (*Bell v. Burson (1971), 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586*), debtors (*Fuentes v. Shevin (1972), 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983*), parolees (*Morrissey v. Brewer (1972), 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593*), and public employees (*Board of Regents v. Roth (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701; Perry v. Sindermann (1972), 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694*).

*Roth* and *Sindermann* are particularly relevant here. In the former, it was held that due process does not require a hearing prior to the failure to renew a nontenured State teacher's contract unless the teacher can show a "property" interest in continued employment or that the failure to renew deprived him of other constitutionally protected rights. David Roth was a first-year teacher at a State university hired for a fixed term of one academic year. During the year he was informed that he would not be rehired. He was given no reason for the decision nor the opportunity to challenge it at a hearing. He filed an action alleging the decision not to rehire him stemmed from his criticism of the university administration, and that, under these circumstances, the fourteenth amendment gave him a right to a statement of reasons for the failure to renew his

contract, and a hearing at which to challenge the decision. His allegation that failure to renew was based on the exercise of his right to freedom of speech was not before the Supreme Court since the District Court had stayed proceedings on that issue. The Supreme Court considered the issues before it to be whether the questioned action deprived Roth of property or liberty and concluded it was not a deprivation of liberty simply not to be rehired in one job; the court further held that Roth had no property right in continued employment because the terms of his contract provided no assurance of continued employment, nor was there any State statute, rule or policy that created any legitimate claim to re-employment. Though the court conceded that Roth had an "abstract concern" in being rehired, it held that he did not have a sufficient interest to require the university authorities to provide a statement of reasons and hearing when they decided not to renew his contract.

*Sindermann* involved similar issues. Respondent was a college professor who had been employed for ten years in the Texas State college system. His most recent appointment was the fourth of a series of one-year contracts to teach at a junior college having no tenure system. He was not offered a new contract at its termination, nor was he afforded a hearing on the nonrenewal decision nor given the reasons for it. Respondent then brought an action alleging the exercise of his right to freedom of speech in public criticism of the college administration prompted the decision not to rehire him, and that failure to afford him a hearing under these circumstances violated the guarantee of procedural due process under the fourteenth amendment. While not specifically relevant here, we note that the Supreme Court held that respondent's lack of contractual or tenure right to re-employment was immaterial to his free speech claim. (*Perry v. Sindermann (1972), 408 U.S. 593, 597-98, 33 L. Ed. 2d 570, 578, 92 S. Ct. 2694.*) Regardless of his right to re-employment, nonrenewal in

retaliation for the exercise of the constitutional right of free speech would be impermissible.

As to the respondent's claim of a property interest in continued employment, the court held that inasmuch as the respondent had alleged the existence of rules and understandings equivalent to a *de facto* tenure system which might support his claim of entitlement to continued employment, he must be given an opportunity to prove the legitimacy of that claim in light of the rules, policies and regulations of the institution. (*Sindermann, 408 U.S. 593, 602-03, 33 L. Ed. 570, 580, 92 S. Ct. 2694.*) If the respondent could prove such a property interest he would, while not being entitled to reinstatement, be entitled to a hearing where he could be informed of the college officials' grounds for his nonretention and challenge their sufficiency. (*Sindermann, 408 U.S. 593, 603, 33 L. Ed. 2d 570, 580-81, 92 S. Ct. 2694.*) The court, however, rejected the notion that a mere subjective expectancy of employment is protected by procedural due process.

Given the expansion of due process guarantees to encompass a broad range of interests now classified for due process purposes as "property," and the specific holdings of *Roth* and *Sindermann,* it is apparent that while every public employee does not have a right to continued employment, a public employee can have such a right dependent upon the surrounding circumstances including existing rules and understandings. Like the teacher in *Sindermann,* a public employee may be able to show, from surrounding circumstances, that he has a legitimate claim to continued employment, and it is clear that such claim, whether characterized as "property" or otherwise, has now been held to be entitled to due process protection. *Perry v. Sindermann, 408 U.S. 593, 601, 33 L. Ed. 2d 570, 580, 92 S. Ct. 2694.*

In light of these decisions it is apparent that one certified as a State employee pursuant to the Personnel Code, the Personnel Department Rules and the Civil

Service Commission Rules of the State of Illinois, contrary to the argument of defendants, does have a "legitimate claim of entitlement to continued employment" (*Sindermann, 408 U.S. at 602, 33 L. Ed. 2d at 580*) safeguarded by due process guarantees. That fact, however, is not in our judgment dispositive of the case, for the requirements of due process are necessarily proportional to the weight of that interest in balancing it against the countervailing interests of society in effective and efficient governmental operation.

A brief review of the pertinent rules and statutes is necessary to define the nature of this claim. The Personnel Code establishes a system of merit employment in Illinois (Ill. Rev. Stat. 1971, ch. 127, par. 63b104a), entry to which is gained by open, competitive examination (pars. 63b108b.1, 63b108b.5—1; Rule 2—10 Department of Personnel). A new employee may attain certified status only after completion of a minimum of a six-month period as a probationer. (Rule 2—330 Department of Personnel.) An employee is not eligible for promotion unless he is certified. (Rule 2—380.) Any employee may be demoted for cause, but a certified employee is entitled to an appeal to the Civil Service Commission. (Rule 2—490.) A certified employee may be discharged only for good cause and after the opportunity for plenary hearing. (Ill. Rev. Stat., 1972 Supp., ch. 127, par. 63b111; Rule 2—720 Department of Personnel.) A certified employee who is discharged has an appeal as a matter of right to the Civil Service Commission. (Rule 2—750.) It is clear, too, that a certified employee who is, by a final decision of the Commission, suspended, removed, discharged, demoted or geographically transferred may secure judicial review of that decision pursuant to the Administrative Review Act. Article XVI, Rules of the Civil Service Commission; Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*

Other rules pertaining to reinstatement and leaves of absence afford greater rights to certified employees than to

probationers. It is entirely clear that the statutory scheme of protection is proportioned to the status of the employee and the seriousness and permanence of the action taken with reference to him.

As heretofore indicated, this case involves a layoff of employees, and certified employees are afforded greater rights in this area as well as others. Certified employees in a particular job situation may not be laid off until probationary, exempt, temporary, emergency and provisional employees have been. Then, certified employees are laid off in order of seniority. (Rule 2—570.) On a re-employment list after layoff the first available employment goes to the certified employee. (Rule 2—580.) A certified employee, if laid off, has the right to request a voluntary reduction in class. (Rule 2—530.) A certified employee who is laid off maintains his continuous service status for a period of up to two years. (Rule 2—250, 2—590.) A certified employee has the right to petition the Director, within 15 days of receipt of layoff notice, for a reconsideration (Rule 2—596), and a right to request a hearing before the Civil Service Commission, which may consist of a staff investigation, or informal hearing, or formal hearing, on the validity of the layoff. (Article XII, Rules of the Civil Service Commission.) Other benefits which attach to the status of employee under the State personnel system include participation in a State employment retirement system and a State employees' group insurance system.

Since *Roth* indicates that plaintiffs' claims to continued employment "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits" (*Board of Regents v. Roth (1972), 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701*), we must assess the adequacy of the due process protections provided by the statutes and

rules—in this case, the Personnel Code, the Personnel Department Rules and the Civil Service Commission Rules of this State—by analysis of the nature of the employment expectancy which they create. The crucial question is whether the same form of protection through procedural due process is constitutionally required for the about-to-be-laid-off employee as is necessary for the about-to-be-discharged employee. We think it clearly is not.

Discharge is a drastic, permanent action with far-reaching consequences. Regardless of the announced reason therefore, the very fact of discharge has an adverse effect upon prospects for future employment. By contrast a layoff does not reflect unfavorably upon an employee. It is not, ordinarily, viewed as a permanent situation, and in this case the very statute which authorizes such action requires preferential treatment as to re-employment and affords alternatives. The Personnel Code in section 108b.13 provides for the adoption of rules:

> "For layoffs by reason of lack of funds or work, abolition of a position or material change in duties or organization, and for reemployment of employees so laid off, giving consideration in both layoffs and reemployment to performance record and seniority in service." (Ill. Rev. Stat. 1971, ch. 127, par. 63b108b.13.)

A layoff may be requested by the operating agency, but must be approved by the Director of the Department of Personnel. (Rule 2—560 Department of Personnel.) The certified employee is in a preferred position as to the order of layoff, and, once laid off, is replaced in order of seniority on a re-employment list. (Rules 2—570, 2—580.) He remains on this certified list for 24 months without losing seniority and has the first option on any temporary or intermittent employment that may arise. (Rules 2—585, 2—590.) While the layoff is pending, and thereafter, the certified employee also has the right to request a voluntary reduction in class. (Rule 2—530.) Additionally, after receiving notice of layoff the certified employee has a right

to petition and receive a reconsideration of the approval of the layoff by the Director of the Department of Personnel (Rule 2–596), and a right to request a hearing from the Civil Service Commission, as earlier indicated, on the validity of the layoff. Article XII, Rules of the Civil Service Commission.

The apparent difference between the procedures provided for certified employees in discharges and layoffs is the right to a plenary hearing and to counsel, witnesses, confrontation and cross-examination prior to his discharge for cause. The certified employee notified of a layoff has 15 days to seek reconsideration thereof by written petition in which he may advance reasons against his layoff. While plaintiffs urge that due process requires that a petition for reconsideration be determined by an impartial arbiter and that the Director of Personnel, having approved the layoff initially, is necessarily biased, we do not agree. Rather he seems to us the logical choice to re-evaluate his approval in light of such additional information as the petitioning employee may present. The employee also has 15 days from the notice of layoff to request a hearing from the Civil Service Commission. Further, he may seek a voluntary reduction in class. While the rules are confusing in that they provide for reconsideration and appeal within the same 15 days, it is clear that an individual is not entitled to remain at his employment and receive compensation until his petitions are acted upon. The pattern envisaged by the statute affords the discharged employee 15 days within which to request a hearing and specifically provides, in the case of reinstatement, for reimbursement for salary lost subsequent to the effective date of the discharge. (Ill. Rev. Stat. 1971, ch. 127, par. 63b111.) A laid-off employee is obviously not entitled to any greater protection.

In our judgment the qualitative differences between layoff and discharge are such that variances in procedure are constitutionally permissible. While the deprivation of a

protected interest, such as that possessed by certified employees, must comport with due process requirements, the measure of those requirements is the importance of the interests involved and the nature of the subsequent proceedings. (*Boddie v. Connecticut (1971), 401 U.S. 371, 378, 28 L. Ed. 2d 113, 119, 91 S. Ct. 780, 786.*) In our opinion the plenary hearings urged by plaintiffs to be essential are not required by our State or Federal constitutions in layoff cases, and the right to request reconsideration, request demotion, and request a Commission hearing meets due·process standards when considered in the context of the compelling interests of State government in effecting personnel changes for reasons of economy and efficiency. It would be virtually impossible for State government to function without substantial confusion, delay and uncertainty if each certified employee were entitled to receive a plenary hearing prior to a layoff.

The judgment of the circuit court of Sangamon County is accordingly reversed and the cause remanded with directions to dismiss the complaint.

*Reversed and remanded, with directions.*

MR. JUSTICE KLUCZYNSKI, specially concurring:

I agree that due process does not require a plenary hearing of the form contemplated by plaintiffs prior to instituting a layoff of certified State employees. However, I believe that this court's opinion should have further addressed itself to certain matters contained in the record. It indicates that members of plaintiffs' class had filed petitions for reconsideration concerning their layoffs within 15 days of the receipt thereof and the Director had not yet rendered a decision at the time this action was commenced on June 27, 1973. Departmental Rule 2—596 provides:

> "Within 15 days of receipt of notice of a certified employee's layoff, such employee may directly petition

the Director of Personnel in writing for reconsideration of his decision approving the layoff. In the event a request for reconsideration is made the Director shall again review and investigate the application of these rules and the validity of the layoff. Notice of the final decision of the Director shall be served on the employee in person or by registered mail."

There may also be others who received notice of their layoff within 15 days preceding June 27 or subsequent thereto. Members of this latter group might not have requested reconsideration under Rule 2—596 or section 12.01 of article XII of the Rules of the Civil Service Commission because it would appear to them that no disposition of their petitions could be effectuated when the circuit court entered a temporary restraining order on June 27 prohibiting defendants from attempting to review the matter. I believe their position is analogous to that provided for in section 23 of the Limitations Act (Ill. Rev. Stat. 1971, ch. 83, par. 24), which provides that when a commencement of an action is stayed by court order the time during which said order is in effect is not included within the limitation period.

The circuit court held Departmental Rule 2—596 and article XII of the Rules of the Civil Service Commission unconstitutional. In reversing that decision I believe that the members of plaintiffs' class, who may still be entitled to exercise their rights under these provisions, should be allowed this prerogative. I would therefore additionally remand this matter to the circuit court to permit them the opportunity to establish whether they might be included within the aforementioned categories for purposes of seeking administrative relief.