MAURICE LAND *et al.*, Plaintiffs-Appellants, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—00—0659

Opinion filed August 27, 2001.—Rehearing denied October 24, 2001.

Lawrence A. Poltrock, Wayne B. Giampietro, Gregory N. Freerksen, and James B. Dykehouse, all of Witwer, Poltrock & Giampietro, of Chicago, for appellants.

Norman M. Hirsch, Brent E. Kidwell, and David D. Brown, all of Jenner & Block, of Chicago, for appellees.

JUSTICE COHEN delivered the opinion of the court:

On January 22, 1999, the Board of Education of the City of Chicago (the Board) "honorably terminated" 138 tenured Chicago public school

teachers. The plaintiffs are 5 of the 138 tenured teachers who were honorably terminated.[1] The terminations were allegedly conducted in accordance with 1995 amendments to the Illinois School Code (the Code) (105 ILCS 5/18—1 *et seq.* (West 2000)). The plaintiffs sought a writ of *mandamus* ordering the Board to reinstate them as Chicago Public School teachers, a permanent injunction restraining the Board from terminating their employment and a declaratory judgment invalidating the Board's layoff policy as violative of their tenure rights under sections 34—84 and 34—85 of the Code (105 ILCS 5/34—84, 34—85 (West 2000)). Both the defendants and plaintiffs filed cross-motions for summary judgment. After pleading concluded, the trial court granted the defendants' motion for summary judgment.

In 1995, the Illinois General Assembly adopted a package of school reform laws, part of which authorized the Board to "promulgate rules establishing procedures governing the layoff or reduction in force of employees and the recall of such employees." 105 ILCS 5/34—18(31) (West 2000). In exercising this authority, the Board adopted a policy titled "Amend Board Report 95—0814—PO2 Policy Regarding Reassignment and Layoff of Regularly Certified and Appointed Teachers." According to this policy:

> "Whenever an attendance center or a program is closed, there is a drop in enrollment, the educational focus of the attendance center is changed such that available teaching positions cannot accommodate some or all current regularly certified and appointed teaching staff, or when an attendance center is subject to actions taken as a result of remediation, probation, reconstitution or educational crisis, such staff will be reassigned or laid off." Board of Education of the City of Chicago, Amend Board Report 95—0814—PO2 Policy Regarding Reassignment and Layoff of Regularly Certified and Appointed Teachers § 1 (hereinafter, Board Report).

The policy requires that a teacher be notified prior to removal[2] predicated on one of the reasons specified in section 1. Board Report

---

[1]On January 25, 2000, the plaintiffs filed a "Motion to Add Party Plaintiffs and to File Amendment to Complaint Requesting Class Relief" pursuant to section 2—801 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—801 (West 2000). In an order dated January 28, 2000, the trial court ordered the motion "entered and continued pending the hearing on the [cross-]motions for summary judgment." The trial court granted defendants' motion for summary judgment without conducting a hearing to determine whether class certification was proper in this case. There is no argument in the briefs concerning class certification and therefore the issue is not before us.

[2]The use of the term "removal" in the Board's layoff policy is distinct from and should not be confused with "removal for cause" as used in sections

§ 3. Once removed, the teacher is designated "reassigned." A reassigned teacher continues to receive full pay and benefits for a 10-month period. Board Report § 10. During this 10-month period, reassigned teachers are provided with the opportunity to seek permanent employment at another school. Board Report § 5. If a reassigned teacher is unable to secure permanent employment within the prescribed period, the teacher is then laid off and "given honorable termination from service." Board Report § 10. Fourteen days' advanced notice of a layoff is required. Board Report § 10.

The plaintiffs received notification that their teaching positions were being closed. As a result, they were allowed 10 months to find alternate permanent employment. The plaintiffs were unable to obtain new permanent positions within the designated 10-month period. As they were unable to find new positions, plaintiffs were sent timely written notice of their "honorable termination." Based on their termination, the plaintiffs filed a complaint against the Board, individual members of the Board and individual officers of Chicago Public Schools (defendants), alleging that they had been removed from their teaching positions in violation of their tenure rights under sections 34—84 and 34—85 of the Code (105 ILCS 5/34—84, 34—85 (West 2000)).

On appeal, the plaintiffs contend: (1) they were removed from their employment contrary to sections 34—84, 34—85 and 34—18 of the Code (105 ILCS 5/34—84, 34—85, 34—18 (West 2000)); (2) they were wrongfully removed from their employment in favor of temporary teachers, probationary teachers and newly hired teachers; (3) the Board improperly delegated to individual school principals its authority to terminate teachers contrary to section 34—8.1 of the Code (105 ILCS 5/34—8.1 (West 2000)); (4) the Board's layoff policy investing principals with discretion in choosing to hire a reassigned teacher is contrary to section 34—8.1 of the Code (105 ILCS 5/34—8.1 (West 2000)); and (5) the termination denied them property rights without due process of law in violation of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2). For the reasons set forth below, we reverse the order granting summary judgment in favor of the defendants and remand this cause for further proceedings.

### 1. Summary Judgment

■ Our review of the circuit court's grant of summary judgment is *de novo. Natale v. Gottlieb Memorial Hospital*, 314 Ill. App. 3d 885,

34—84 and 34—85 of the Illinois School Code. 105 ILCS 5/34—84, 34—85 (West 2000).

888 (2000). Summary judgment is properly granted where "the pleadings, depositions, admissions, and affidavits on file, when taken together in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Freemont Casualty Insurance Co. v. Ace-Chicago Great Dane Corp.*, 317 Ill. App. 3d 67, 73 (2000). In situations where both parties file cross-motions for summary judgment, "they agree that no material issue of fact exists and that only a question of law is involved." *Robson v. Electrical Contractors Ass'n Local 134 IBEW Joint Pension Trust*, 312 Ill. App. 3d 374, 380 (2000). While it is well established that constitutional issues and issues regarding statutory construction are both questions of law (*E&E Hauling, Inc. v. Ryan*, 306 Ill. App. 3d 131, 136 (1999)), "the mere filing of cross-motions for summary judgment does not require that the court grant the requested relief to one of the parties where genuine issues of fact exist precluding summary judgment in favor of either party" (*Travelers Insurance Co. of Illinois v. Eljer Manufacturing, Inc.*, 307 Ill. App. 3d 872, 878 (1999)).

■ In support of their cross-motion for summary judgment, the defendants submitted the affidavit of Xiomara Metcalfe, director, Chicago Public Schools, bureau of recruitment and substitute services, department of human resources. In her affidavit, Metcalfe alleges that "[alt]hough [Monroe] Morgan was slated for honorable termination on January 22, 1999, he was able to secure appointment to a permanent position at Spaulding High School effective January 22, 1999. Accordingly, he was never terminated from service and never lost any salary, benefits or seniority as a result of having been a reassigned teacher."[3]

The record reflects that Monroe Morgan filed an affidavit to rebut the defendants' assertion that he was never laid off. In his affidavit, Morgan alleges that "although it is true that I was able to secure a position at Spalding High School effective January 22, 1999, the position that I obtained was not a teaching position."

The defendants argue that because Morgan obtained a "teaching position" at Spalding High School on the day he was scheduled to be laid off, they are entitled to summary judgment on Morgan's claims. The record is devoid, however, of any evidence demonstrating that the position Morgan obtained at Spalding High School on January 22, 1999, was a "teaching position." In fact, Morgan's own affidavit refutes this assertion, stating that the position he obtained at Spald-

---

[3]At the onset it should be noted that the trial court granted summary judgment in favor of the defendants and against all plaintiffs, making no specific findings as to any individual plaintiff.

ing High School was "not a teaching position." Furthermore, Metcalfe's affidavit only states that Morgan secured a "permanent" position at Spalding High School, not a teaching position.

A careful review of the Board's policy in its entirety demonstrates that a reassigned tenured teacher must obtain an alternate *teaching* position in order to avoid layoff. Here it is unclear exactly what type of position Morgan obtained at Spalding High School and whether this was a teaching or a nonteaching position. Metcalfe's assertion in her affidavit that Morgan "never lost any salary, benefits or seniority" as the result of his reassignment makes the determination even more puzzling. Although the Board's policy provides a reassigned teacher with full pay and benefits for the 10-month interim period, it is unclear whether Morgan received full pay and benefits during this period or after securing the position at Spalding High School. On these facts, this court cannot ascertain whether Morgan was laid off under the Board's policy. Accordingly, as genuine issues of material fact remain, the trial court's grant of summary judgment with respect to plaintiff Monroe Morgan is reversed.

## A. Statutory Interpretation

■ The plaintiffs first argue that summary judgment should be granted in their favor based upon the plain meaning of sections 34—84, 34—85 and 34—18 of the Code (105 ILCS 5/34—84, 34—85, 34—18 (West 2000)). Both sections 34—84 and 34—85 state that tenured teachers can only be "removed" based upon "cause," and then only after receiving notice and a hearing. 105 ILCS 5/34—84, 34—85 (West 2000). Section 34—18(31), on the other hand, grants the Board the authority to "promulgate rules establishing procedures governing the layoff or reduction in force of employees." 105 ILCS 5/34—18(31) (West 1998). The plaintiffs argue that sections 34—84 and 34—85 of the Code are exceptions to the Board's general power to lay off employees in section 34—18. To support this argument, the plaintiffs quote the introductory language of section 34—18, which states: "The [B]oard shall exercise general supervision and jurisdiction over the public education and public school system of the city, and, *except as otherwise provided by this Article*, shall have power ***." (Emphasis added.) 105 ILCS 5/34—18 (West 2000). Based upon this introductory language, the plaintiffs assert that the provisions of sections 34—84 and 34—85 are "expressly excepted from the general application of the enumerated provisions of Section 34—18."

The defendants respond that the 1995 amendment to section 34—18, authorizing the Board to adopt its own layoff procedure, reflects a clear intent by the legislature to provide "the Board [with] greater

flexibility when laying off tenured teachers." According to the defendants, the amendment to section 34—18 is a "distinct statutory provision" governing *layoffs* of employees as opposed to sections 34—84 and 34—85, which solely govern the *removal* of tenured teachers for cause.

■ When a court is called upon to interpret a statute, primary importance is placed on ascertaining and giving "effect to the true intent and meaning of the legislature." *Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board*, 309 Ill. App. 3d 88, 93 (1999). "Where the language of a statutory provision is clear and unambiguous, the plain and ordinary meaning of the words will be given effect without resorting to extrinsic aids for construction." *Chicago School Reform Board of Trustees*, 309 Ill. App. 3d at 93-94. Therefore, courts should first "look to the language of the statute as the best indication of legislative intent." *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 168 (1995). In addition to the plain language of a statute, an "amendment [to that statute] is also an appropriate source for determining legislative intent." *Chicago School Reform Board of Trustees*, 309 Ill. App. 3d at 95. In fact, "[a] material change to a statute creates a rebuttable [pre]sumption that the legislature intended to change the existing law." *Chicago School Reform Board of Trustees*, 309 Ill. App. 3d at 95.

■ Along with the introductory language of section 34—18, subsection 31 of the amended Code states:

> "The board shall exercise general supervision and jurisdiction over the public education and the public school system of the city, and, except as otherwise provided by this Article, shall have power:
> * * *

> 31. To promulgate rules establishing procedures governing the layoff or reduction in force of employees and the recall of such employees, including, but not limited to, criteria for such layoffs, reductions in force or recall rights of such employees and the weight to be given to any particular criterion. Such criteria shall take into account factors including, but not limited to, qualifications, certifications, experience, performance ratings or evaluations, and any other factors relating to an employee's job performance[.]" 105 ILCS 5/34—18 (West 2000).

Based upon this unequivocal language, we find that the legislature clearly empowered the Board to lay off "employees." This determination is supported by commentary in both the Illinois House of Representatives and the Illinois Senate concerning the 1995 amendments. "The court may use legislative debates to determine the legisla-

tive intent underlying specific legislation." *Chicago School Reform Board of Trustees*, 309 Ill. App. 3d at 96. Both the House and Senate transcripts reveal an overall intent to grant more power and authority to the Board through the amendments.

During the debates, Senator Watson, a co-sponsor of House Bill 206, stated:

> "We are abolishing the current fifteen-member Chicago Board of Education and creating a five-member Chicago School Reform Board of Trustees to assume control of the school system for the next four years. The Mayor must appoint what we would call the Super Board within thirty days of the bill's effective date. The Mayor should also designate[ ] one mayor [*sic*] of the Super Board as president. *We give considerable power and authority to the Board.* It directs them to improve the quality of the educational services, reduce the cost of noneducational services, develop a long-term financial plan, streamline and strengthen the management, direct accountability efforts, enact policies that ensure the system will operate in an efficient and ethical manner \*\*\*." (Emphasis added.) 89th Ill. Gen. Assem., Senate Proceedings, May 23, 1995, at 163.

Additionally, in the House debates, Representative Daniels stated:

> "The school improvements itself allow for the monitoring of academic progress of schools and report such information to the *trustees that are now empowered to run the schools.* \*\*\* We created the ability to remediate and reconstitute failing schools and we allowed for intervention in those schools that weren't working, and streamlined the teacher evaluation and dismissal process while at the same time setting up a new mechanism of learning zones in Chicago." (Emphasis added.) 89th Ill. Gen. Assem., House Proceedings, May 24, 1995, at 77.

Both statements clearly demonstrate that the intent of the legislature in enacting the 1995 amendments to the Code was to "grant the School Board more power in dealing with its schools and its employees." *Chicago School Reform Board of Trustees*, 309 Ill. App. 3d at 97. Accordingly, we find that section 34—18(31) of the Code empowers the Board to lay off "employees" of the Chicago Public Schools.

However, our conclusion that the Board has the power to lay off "employees" does not necessarily mean that subsection 31 applies to the plaintiffs in this case. We must next determine whether the legislature intended the word "employees" in section 34—18(31) to include tenured teachers.

The plain and ordinary meaning of "employee" is "*any* worker who is under wages or salary to an employer and who is not excluded by agreement from consideration as such a worker." (Emphasis added.) Webster's Third New International Dictionary 743 (1981). In light

of this broad definition, we find that "employees," as used by the legislature in section 34—18(31), embodies all persons who work for and are compensated by the Chicago Public Schools, including tenured teachers.[4]

Logically, our final inquiry must be whether the legislature intended sections 34—84 and 34—85 to be exceptions to the layoff provision provided in 34—18(31).[5] Section 34—84 addresses appointment and promotion of teachers. "[A]fter satisfactory service for a probationary period *** appointments of teachers shall become permanent, subject to removal for cause in the manner provided in Section 34—85." 105 ILCS 5/34—84 (West 2000). Section 34—85 then addresses the method and manner involved in removing teachers. "No teacher employed by the board of education shall (after serving the probationary period specified in Section 34—84) be removed except for cause." 105 ILCS 5/34—85 (West 2000).

The power of the Board to "lay off" tenured teachers is not a novel power under the 1995 amendments. Prior to the amendments, section 34—84 also provided the Board with the authority to lay off tenured teachers. 105 ILCS 3/34—84 (West 1995); *Proviso Council of West Suburban Teachers Union, Local 571 v. Board of Education, Proviso Township High Schools, District 209*, 160 Ill. App. 3d 1020, 1026 (1987); *Perlin v. Board of Education of the City of Chicago*, 86 Ill. App. 3d 108, 112 (1980). Under the previous layoff scheme, the Board had the ability to lay off teachers "not on an administrative payroll, who [had] a rating of 'satisfactory' or better and whose service [was] no longer required because of a decrease in student membership, a change in subject requirements within the attendance center organization, or the closing of an attendance center." 105 ILCS 5/34—1.1 (West 1994). Teachers laid off under this provision were designated "reserve teach-

---

[4]Despite the lack of reference to a collective bargaining agreement in the record, such an agreement would have no impact on our decision in this case. The matter of employee layoffs is explicitly excluded from collective bargaining pursuant to section 4.5(3) of the Illinois Educational Labor Relations Act. 115 ILCS 5/4.5(3) (West 2000).

[5]The plaintiffs also request that we find subsection 31 to apply only to temporary teachers, substitute teachers, nonteaching staff and "numerous other employees" but not to tenured teachers. However, it is well established that when interpreting a statute, a court must not create any "limitations not suggested by the statutory language" or "read into the statute words that are not found there either by express inclusion or fair implication." *American Ambassador Casualty Co. v. City of Chicago*, 205 Ill. App. 3d 879, 884 (1990). The plaintiffs are clearly asking this court to read into section 34—18(31) "limitations not suggested by the statutory language." We decline to do so.

ers." 105 ILCS 5/34—84 (West 1994). The Board's statutory authority to lay off, however, was subject to an explicit set of restrictions. For example, "reserve teachers" had 25 months to obtain an alternative permanent position before they could be "honorably terminated from service." 105 ILCS 5/34—84 (West 1994).

The 1995 amendments simply eliminated all provisions referring to "reserve teachers" and added subsection 31 to section 34—18, granting power to the Board to promulgate its *own* procedures "governing the layoff or reduction in force of employees." 105 ILCS 5/34—18(31) (West 2000). After examining both the pre-1995 Code and the amended Code, it becomes clear to this court that the amendments regarding layoffs were procedural changes, not substantive changes.

■ Contrary to the plaintiffs' assertions, sections 34—84 and 34—85 are not exceptions to section 34—18(31) because neither section 34—84 nor section 34—85 specifically addresses "layoffs." "The sections of the School Code are *in pari materia* and must be construed with reference to one another in order to give harmonious meaning to the act as a whole." *Chicago School Reform Board of Trustees*, 309 Ill. App. 3d at 94. Section 34—18(31) addresses "layoffs" while sections 34—84 and 34—85 address "removal for cause." Traditionally, discharges for cause have been associated with "shortcomings or deficiencies" in an employee's actual job performance. *Calumet City Professional Firefighters Ass'n v. Stefaniak*, 243 Ill. App. 3d 254, 258 (1993); *Hahn v. City of Harvard*, 239 Ill. App. 3d 819, 822 (1992). Layoffs, on the other hand, are unrelated to actual job performance. *Powell v. Jones*, 56 Ill. 2d 70, 80 (1973). A layoff customarily occurs as the result of such outside forces as economic decline, reorganization or the abolition of job positions. We therefore agree with the defendants. Rather than being exceptions to the layoff provision of section 34—18(31), sections 34—84 and 34—85 are entirely separate statutory provisions governing the "removal" of tenured teachers for cause.

### B. Wrongful Layoff

While it is clear that the Board had the power to lay off the plaintiffs under the Code, the Board was still obligated to follow its own procedures in doing so.

The policy implemented by the Board provides four bases for the reassignment or layoff of tenured teachers. One of these bases arises when "an attendance center or program is closed." Board Report § 1. The defendants submitted in support of their cross-motion for summary judgment the affidavit of Xiomara C. Metcalfe, director of the Chicago Public Schools' bureau of recruitment and substitute services,

department of human resources. In her affidavit, Metcalfe avers that all five plaintiffs were laid off when their teaching positions were closed. According to Metcalfe, the plaintiffs received notification of the closings within the prescribed period. Copies of the notification letters sent to Monroe Morgan and Paul Gaubis were attached as exhibits to Metcalfe's affidavit.

The record reflects that of the five plaintiffs, only Maurice Land and Paul Gaubis submitted affidavits in support of plaintiffs' motion for summary judgment. Land admits in his affidavit that he was notified in September of 1996 that the behavioral disorder program under which he taught was being closed. Similarly, Gaubis admits in his affidavit that he was notified in October of 1997 that his teaching position was being "eliminated."

■ The record further reflects that plaintiffs Varkey Achettu, Monroe Morgan and Charlene Jackson filed no affidavits—sufficient or otherwise—to rebut the defendants' assertion that they were properly laid off under the Board policy. The suggestion that an issue of material fact exists, without supporting evidence, is insufficient to create one. *In re Marriage of Palacios*, 275 Ill. App. 3d 561, 568 (1995). In the face of supporting affidavits from the moving party, the nonmovant must submit counteraffidavits (or refer to depositions or admissions on file) in order to raise an issue of fact sufficient to survive summary judgment. *Werckenthein v. Bucher Petrochemical Co.*, 248 Ill. App. 3d 282, 288 (1993). Failure to file counteraffidavits in opposition to a summary judgment motion supported by affidavits is fatal. *Fitzpatrick v. Human Rights Comm'n*, 267 Ill. App. 3d 386, 391 (1994).

■ The Board's layoff policy is clear and unambiguous. The policy allows for the layoff of tenured teachers when their teaching positions are closed. The record establishes that the plaintiffs were laid off because their teaching positions were closed. The plaintiffs concede that proper notice was given. Accordingly, we find that the plaintiffs have failed to raise any genuine issue of material fact with respect to the propriety of their layoffs under the Board's policy.

The plaintiffs further argue, however, that even if the Board had the statutory authority to lay off tenured teachers under the Code, the plaintiffs were improperly laid off because the Board retained temporary teachers, probationary teachers and newly hired teachers while laying off tenured teachers. Specifically, the plaintiffs assert that the Board is required under the Illinois tenure laws to first dismiss all temporary teachers, probationary teachers and newly hired teachers prior to dismissing tenured teachers. *People ex rel. Thomas v. Board of Education of the City of Chicago*, 40 Ill. App. 2d 308, 316 (1963); *Hankenson v. Board of Education*, 15 Ill. App. 2d 440, 447 (1957).

It is the responsibility of the appellant to present an adequate record for review. *In re K.S.*, 317 Ill. App. 3d 830, 832 (2000). Here, the plaintiffs have failed to present any competent evidentiary matter to support the assertion that they were laid off while temporary teachers, probationary teachers or newly hired teachers were retained. Consequently, this court has no basis upon which to decide the merits of plaintiffs' claim. Therefore, the claim is waived. *People v. Townsend*, 275 Ill. App. 3d 200, 206 (1995).

## C. Delegation of Authority

■ The plaintiffs next contend that the Board improperly delegated its layoff authority to individual school principals in violation of section 34—8.1 of the Code. According to the plaintiffs, individual school principals made the determination to lay them off and not the Board itself. Section 34—8.1 of the Code provides in part:

> "Principals. Principals shall be employed to supervise the operation of each attendance center. Their powers and duties shall include but not be limited to the authority (i) to direct, supervise, evaluate, and suspend with or without pay or otherwise discipline all teachers, assistant principals, and other employees assigned to the attendance center in accordance with board rules and policies and (ii) to direct all other persons assigned to the attendance center pursuant to contract with a third party to provide services to the school system. *The right to employ, discharge, and layoff shall be vested solely with the board.* The principal shall fill positions by appointment as provided in this Section and *may make recommendations to the board regarding the employment, discharge, or layoff of any individual.*" (Emphasis added.) 105 ILCS 5/34—8.1 (West 2000).

The defendants agree that the authority to lay off employees is "vested solely with the Board" pursuant to section 34—8.1 of the Code. However, they contend that the language of section 34—18(31) empowering the Board to "promulgate rules establishing procedures governing the layoff or reduction in force of employees" eliminated any requirement that the Board itself directly vote on each layoff. 105 ILCS 5/34—18(31) (West 2000). According to the defendants, section 34—18(31) authorizes the Board to exercise its layoff power through the implementation of its own layoff policy.

■ Once again we are called upon to interpret the precise language of the Code to determine the intent of the legislature. *In re Application for Judgment*, 167 Ill. 2d at 168. Section 34—8.1 clearly grants absolute authority to the Board to lay off Chicago Public School employees. *Chicago School Reform Board of Trustees*, 309 Ill. App. 3d at 96-97. The term "vested" as used by the legislature supports this

determination. "Vested" is defined as "giv[ing] the rights of absolute ownership." Black's Law Dictionary 1563 (6th ed. 1990). Likewise, we find that the term "right" as used in section 34—8.1 of the Code is synonymous with the term "authority." See Webster's Third New International Dictionary 1955 (1981) (defining "right" as "a power, privilege, or immunity vested in one (as by authority or social custom)"). Based on the statute's unequivocal language, it is clear the legislature granted the Board alone the power to determine layoffs. As such, defendants' contention that the Board's authority under section 34—8.1 is properly exercised through the promulgation of its layoff policy is without merit.[6]

As we stated above, "[t]he sections of the School Code are in pari materia and must be construed with reference to one another in order to give harmonious meaning to the act as a whole." *Chicago School Reform Board of Trustees*, 309 Ill. App. 3d at 94. A careful reading of sections 34—8.1 and 34—18(31) together demonstrates that the Board has the clear power both to lay off employees and to "promulgate rules establishing procedures governing the layoff *** of employees." 105 ILCS 5/34—8.1, 34—18(31) (West 2000). Contrary to the defendants' assertions, however, the promulgation of policy is not interchangeable with the delegation of authority. Pursuant to section 34—8.1, the function of principals is to make *recommendations* to the Board "regarding the employment, discharge, or layoff of any individual." 105 ILCS 5/34—8.1 (West 2000). This statutory language trumps any rules promulgated by the Board in its layoff policy. Consequently, the "policy" regarding layoffs mandated by the legislature under section 34—8.1 is clear: the Board has the sole power to perform the layoffs; however, it may receive recommendations as to layoffs from

---

[6]Equally without merit is the Board's assertion that section 34—18(31) somehow eliminated any requirement that the Board itself vote on each layoff. The basis of the Board's argument is that the Code lacks any specific requirement that the Board vote on each layoff and instead specifically authorizes the Board the authority to promulgate a policy regarding layoffs. The Board's own policy, however, fails to state who in fact must make the determination to lay off and thus does not therefore eliminate any requirement that the Board vote on each individual layoff. More importantly, defendants' argument either ignores or overlooks the precise wording of section 34—8.1 which clearly grants the Board the sole authority to lay off employees of the Chicago Public Schools. 105 ILCS 34—8.1 (West 2000). While granted the precise mechanism the Board must use to come to its determination to lay off employees is not stated, the fact that the Board itself must make the determination is stated. Whether by voting or some other means of reaching a consensus, the Code makes it clear that the Board must make the layoff determination.

principals. Accordingly, we find that the Board may establish a layoff policy as authorized by section 34—18(31) of the Code, but may not through that policy delegate its absolute layoff power to school administrators.

■■■ Irrespective of our resolution of this issue, one important question remains unanswered: Who laid off the plaintiffs? Surprisingly, neither party presented any clear evidence on this issue. A review of the record reveals that only two affidavits were provided by the plaintiffs in support of their summary judgment motion. In Maurice Land's affidavit, Land states that he "was informed by the principal of Suder Elementary School that [she was deleting] the Behavioral Disorder Program at the school." Paul Gaubis, on the other hand, states that he was "informed by Board personnel that [he] was to be a reassigned or reserve teacher after [his] position was eliminated at Dunbar Vocational High School." Both Land's and Gaubis' affidavits only support the contention that they received notice of their impending layoffs after their teaching positions were closed. Neither affidavit states *who* made the determination to lay them off.

In support of their cross-motion for summary judgment, defendants provided the affidavit of Xiomara C. Metcalfe, the director of the Chicago Public Schools' bureau of recruitment and substitute services, department of human resources. Metcalfe's affidavit similarly fails to provide any evidence as to who made the determination to lay off the plaintiffs. Her affidavit states only that Monroe Morgan, Paul Gaubis, Varkey Achettu and Charlene Jackson were each notified in a letter from Thomas J. Doyle, then director of human resources, that their teaching positions were being closed. Copies of the letters sent to Mr. Morgan and Mr. Gaubis were attached to Metcalfe's affidavit. The opening line of the letter notifies the addressee that his teaching position has been closed; however, the letter fails to state who made the determination to actually eliminate the position.

As stated above, section 34—8.1 of the Code mandates that the Board itself must make the determination to lay off teachers. 105 ILCS 5/34—8.1 (West 2000). With respect to the plaintiffs, the record is devoid of evidence that the Board itself determined that they should be laid off. Therefore, the source of the layoff order directed to the plaintiffs is an issue of material fact sufficient to preclude summary judgment.[7] *Travelers Insurance Co. of Illinois*, 307 Ill. App. 3d at 878.

The plaintiffs also claim that the section of the Board's layoff

_____

[7]The plaintiffs alternatively argue that if this court fails to grant their motion for summary judgment, this matter should be remanded for a hearing

policy investing principals with discretion in determining whether to hire a reassigned teacher is an "abrogation of the Board's responsibility to hire and fire teachers." We decline to address the plaintiffs' claim because the procedure in question has no effect on the outcome of this case. The plaintiffs were "honorably terminated" from service on January 22, 1999. This appeal involves the propriety of the plaintiffs' layoffs, not the failure of the Board or individual school principals to appoint the plaintiffs to permanent teaching positions during the 10-month reassignment period. As such, we decline to address the plaintiffs' argument.

## 2. Due Process

In their final argument, the plaintiffs contend that they have been denied property rights in their tenured teaching positions without due process of law in violation of the United States and Illinois Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. The plaintiffs set forth two due process challenges: (1) that the plaintiffs were discharged without notice and a hearing contrary to sections 34—84 and 34—85 of the Code; and (2) that section 34—18(31) of the Code and the Board's layoff policy together created a property right in their continued employment requiring that they be afforded a hearing prior to being laid off.

■ Plaintiffs' first argument fails. We have already concluded that the plaintiffs' termination was not "for cause." Therefore, their layoffs are not governed by sections 34—84 and 34—85 of the Code and the hearing procedures contained therein. The plaintiffs' argument with respect to lack of notice also fails. In their complaint, the plaintiffs concede that they "received written notice of termination from the Defendants." Attached to the complaint is a letter from the department of human resources, Chicago Public Schools, dated January 6, 1999. The letter states that it serves to "inform [the plaintiffs] that [they] will be laid off and honorably terminated effective January 22, 1999." According to the Board's layoff policy, a teacher must be notified "at least 14 days in advance of the date the layoff is to take effect." Board Report § 10. The layoff was to take effect January 22, 1999, and the notification letter was sent on January 6, 1999, clearly within the prescribed 14-day period. We therefore find that the plaintiffs were properly notified under the Board's layoff policy.

---

on whether there existed a lack of work or lack of funds which justified the plaintiffs' layoff. The plaintiffs cite no authority to support this contention. In fact, the Board's layoff policy directly contradicts such a proposition. The layoff policy clearly allows for a layoff of tenured teachers when their teaching positions are closed. We find no merit in plaintiffs' claim.

■ The plaintiffs' second argument, that section 34—18(31) and the Board's layoff policy together created a property right in plaintiffs' continued employment, warrants further discussion. Both the United States and Illinois Constitutions provide that a person cannot be deprived of property without due process of law. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. To have a protectable property interest in public employment, "a person clearly must have more than an abstract need or desire for it. He must *** have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709 (1972); *Buccieri v. Wayne Township*, 111 Ill. App. 3d 396, 399 (1982). These property interests are not created by the Constitution, but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents*, 408 U.S. at 577, 33 L. Ed. 2d at 561, 92 S. Ct. at 2709. "While every public employee does not have a right to continued employment, a public employee can have such a right dependent upon the surrounding circumstances including existing rules and understandings." *Buccieri*, 111 Ill. App. 3d at 400.

■ The plaintiffs have failed to cite to any authority—and we are unable to locate any—to support their claim that both section 34—18(31) of the Code and the Board's layoff policy created a property interest in their continued employment. Traditionally, Illinois courts have found layoffs to be distinct from discharges "for cause." Thus, the notice and hearing procedures required in cases of discharges "for cause" are inapplicable to layoffs. *Chestnut v. Lodge*, 34 Ill. 2d 567, 570 (1966); *Hahn v. City of Harvard*, 239 Ill. App. 3d 819, 822 (1992).

In *Powell v. Jones*, our supreme court held that laid-off certified state employees were not entitled to plenary pre-layoff hearings. *Powell v. Jones*, 56 Ill. 2d 70, 82 (1973). The specific issue before the court was "whether the same form of protection through procedural due process is constitutionally required for the about-to-be-laid-off employee as is necessary for the about-to-be-discharged employee." *Powell*, 56 Ill. 2d at 80. The court noted that "[t]he apparent difference between the procedures provided for certified employees in discharges[, as opposed to] layoffs[,] is the right to a plenary hearing and to counsel, witnesses, confrontation and cross-examination prior to [an employee's] discharge for cause." *Powell*, 56 Ill. 2d at 81. The court then found that pre-layoff hearings were not constitutionally required and stated that "[i]t would be virtually impossible for State government to function without substantial confusion, delay and uncertainty if each certified employee were entitled to receive a plenary hearing prior to a layoff." *Powell*, 56 Ill. 2d at 82.

Similarly, the apparent difference between discharging teachers "for cause" under sections 34—84 and 34—85 and laying off teachers under section 34—18(31) of the Code is the requirement of notice and a hearing in cases of discharge. Under *Powell*, this distinction clearly does not violate the United States or Illinois Constitution. To hold otherwise would hang an anvil around the Board's collective neck. This situation is precisely that which the *Powell* court sought to avoid. We therefore hold that neither section 34—18(31) of the Code nor the Board's layoff policy creates a property right in the continued employment of tenured teachers. Analysis mandates that plaintiffs' second due process argument fails.

For the foregoing reasons, the trial court's order granting summary judgment in favor of defendants is reversed and the cause is hereby remanded for proceedings consistent with this opinion.

Reversed and cause remanded.

O'MARA FROSSARD and TULLY, JJ., concur.