# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-3396

CHICAGO TEACHERS UNION, LOCAL NO. 1,
AMERICAN FEDERATION OF TEACHERS,

*Plaintiff-Appellee,*

*v.*

BOARD OF EDUCATION OF THE CITY OF CHICAGO, et al.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-cv-04852—**David H. Coar**, *Judge.*

ARGUED JANUARY 7, 2011—DECIDED MARCH 29, 2011

Before MANION and WILLIAMS, *Circuit Judges*, and
CLEVERT, *District Judge.*[*]

WILLIAMS, *Circuit Judge.* Facing significant budget
deficits, the Chicago Board of Education was forced to

---

[*] The Honorable Charles N. Clevert, Jr., Chief Judge of the
United States District Court for the Eastern District of Wis-
consin, sitting by designation.

lay off nearly 1,300 teachers in several stages during June, July, and August of 2010. Although some of those teachers have been re-hired, many have not, even as new vacancies have arisen within the Chicago Public School system. The teachers contend that they have a due process right under the Fourteenth Amendment to an opportunity to show that they are qualified to fill new vacancies as they arise for a reasonable period of time. We agree. The district court entered an injunction requiring the Board to collaborate with the Union to promulgate regulations to establish recall procedures pursuant to Section 34-18(31) of the Illinois School Code. While we agree that the Board should promulgate the regulations, there is nothing in Section 34-18(31) that requires cooperation with the Union. We therefore direct the court to modify the injunction to make it conform to this opinion.

## I. BACKGROUND

Appellant Board of Education of the City of Chicago (the "Board") is organized under Article 34 of the Illinois School Code and is charged with the governance of the Chicago Public School system. The Board employs over 40,000 persons, over half of whom are teachers. Appellee Chicago Teachers' Union (the "Union") is the teachers' exclusive bargaining representative.

Facing significant budget deficits on the eve of the 2010-2011 school year, the Board was forced to lay off nearly 1,300 teachers. The Board implemented its layoffs through a series of resolutions issued over the sum-

mer. On June 15, 2010, the Board passed a resolution authorizing the "honorable termination" of tenured teachers.

The Board passed a second resolution on June 23, 2010, authorizing schools to first lay off teachers who were under remediation and whose last performance ratings were negative. Although the Board suggested to the media that the layoff largely involved teachers with unsatisfactory evaluations, most of the teachers laid off had "excellent," "superior," or "satisfactory" ratings.

All laid-off teachers received notice of their termination. Along with their notices, the Board gave the teachers information on how to search and apply for vacant teaching positions within the Chicago Public School system. The notices also pointed the teachers to a website listing vacancies and included invitations to attend a résumé and interviewing workshop and two job fairs that were open solely to displaced teachers. However, not all vacancies were listed on the website, and laid-off teachers were not given preference for other teaching jobs.

Throughout the summer, the Board laid off 1,289 teachers in several phases that ended on August 31, 2010. However, the record indicates that at least some persons were hired to fill teaching positions that became available during the summer. The teachers hired to fill those positions were not tenured teachers.

Due to an increase in federal funding in August 2010, the Board recalled approximately 715 tenured teachers who had been laid off or given notices. The teachers were not recalled pursuant to an official recall policy. As the

Board's Labor Relations Officer, Rachel Resnick, stated in her deposition, "A teacher who is laid off may be rehired, but we have no recall policy."

Since the layoff ended, more vacancies have opened up within the Chicago Public School system. Natural labor needs compel the Board to hire hundreds of new teachers every year. The laid-off teachers who were not rehired complain that many of those positions have been filled with new hires instead of with laid-off tenured teachers.

On August 10, 2010, the Union filed a five-count complaint.[1] Three days later, it filed a motion for a preliminary injunction. On September 15, 2010, the district court held a hearing to simultaneously address the Union's motion for a preliminary injunction and its request for a permanent injunction. The court found that the teachers had a property interest proceeding from 105 ILCS 5/34-18(31) that was protected by the Fourteenth Amendment to the United States Constitution and that entitled them to some kind of retention procedure.

The court then found that, in addition to succeeding on the merits, the Union met the remaining three requirements for obtaining a permanent injunction. First, it concluded there was no adequate remedy at law because

---

[1] The Union subsequently withdrew Counts III, IV, and V of the Complaint. Count II, which challenged the Board's decision to discharge 25 to 50 teachers who were chosen allegedly for discharge because of a single "unsatisfactory" evaluation, is not at issue in this appeal.

the teachers sought an opportunity to be considered for a position, and it would be impossible to place a monetary value on that opportunity. Second, the balance of the equities favored the Union because the Board would suffer no injury as the Union did not seek to restore the teachers to their former positions but merely to have the Board implement a procedure for the retention of laid-off teachers. Third, there could be no conceivable harm to the public resulting from the consideration of tenured teachers for existing vacancies. The court therefore entered an injunction: (1) directing the Board to rescind the discharges of tenured teachers under the Board's June 15, 2010 resolution; (2) directing the Board to promulgate, in consultation with the Union and after good-faith negotiations, a set of recall rules compliant with 105 ILCS 5/34-18(31) within 30 days; and (3) enjoining the Board from conducting future layoffs in a similar manner until recall rules had been promulgated.

The Board appealed. On October 13, 2010, the Board filed a motion to stay the permanent injunction pending the outcome of this appeal, which the district court granted. The Union subsequently filed a motion to expedite this appeal, which was granted.

## II. ANALYSIS

We review the district court's legal determinations de novo, and its findings of fact for clear error. *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 870 (7th Cir. 2009).

A. Due Process Claim

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972). To prevail on a claim for deprivation of property without due process, a plaintiff must establish that she holds a protected property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546-47 (1985). Property interests are not created by the Constitution, but are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 561. Property interests may arise by way of statutes, regulations, municipal ordinances, or by way of an express or implied contract, such as "rules or understandings that secure certain benefits and that support claims of entitlement to benefits." *Covell v. Menkis*, 595 F.3d 673, 675-76 (7th Cir. 2010).

An individual has a property interest in a benefit if she has more than an "abstract need" for, or "unilateral expectation" of, that benefit. *Roth*, 408 U.S. at 577. The individual must have a legitimate claim of entitlement. *Id.* In the employment context, a property interest exists "when an employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met." *Buttitta v. City of Chicago*, 9 F.3d 1198, 1202 (7th Cir. 1993). If a court determines that an individual holds a protected property interest, the question becomes what process is due. *Loudermill*, 470 U.S. at 541.

In Illinois, tenured teachers cannot be discharged except for cause:

> Appointments and promotions of teachers shall be made for merit only, and after satisfactory service for a probationary period . . . appointments of teachers *shall become permanent*, subject to removal for cause in the manner provided by Section 34-85.

105 ILCS 5/35-84 (emphasis added). Section 34-85 provides: "No teacher employed by the board of education shall after serving the probationary period specified in section 34-84 be removed *except for cause*." (emphasis added).

Thus, tenured teachers in Illinois have a property interest in their continued employment. *See Loudermill,* 470 U.S. at 535-39 (state statute providing that classified civil service employees were entitled to retain their positions during good behavior and prohibiting dismissal except for bad behavior created a property interest in continued employment); *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (written contract with an explicit tenure provision evidenced a formal understanding that supported a teacher's claim of entitlement to continued employment). If a tenured teacher is fired without cause, this is a deprivation of property, and the teacher need only show that it was done without due process of law to prove a violation of the Fourteenth Amendment. *See Bigby v. Chicago*, 766 F.2d 1053, 1056 (7th Cir. 1985).

"The usual though not exclusive modern meaning of [due process] is notice of charges and an opportunity for a

hearing . . . ." *Id.* at 1058. We have, however, recognized that there is "an exception to a hearing right when [a] discharge is caused by reorganization." *Misek v. City of Chicago*, 783 F.2d 98, 100-01 (7th Cir. 1986). Illinois courts have also found that pre-termination hearings are unnecessary before good faith economic layoffs. *See Land v. Bd. of Educ. of Chi.*, 757 N.E.2d 912 (Ill. App. Ct. 2001) ("*Land I*") (finding that teachers who were placed in reassignment pool for 10 months but could not find jobs were not entitled to pre-termination hearings before being terminated). Similarly, we have found that a pre-termination hearing is not necessary before a layoff so long as adequate post-termination procedures are available "to [determine] whether the termination under the auspices of a [layoff is] permissible or not" and whether it is "being used to mask an individualized, merit-based action." *Lalvani v. Cook County*, 396 F.3d 911, 915-17 (7th Cir. 2005) ("*Lalvani II*"). But the teachers here do not claim (although they suggest) that the layoffs were pretextual. Instead, they argue that they are entitled to an opportunity to show that they are qualified for vacancies that continue to arise within the Chicago Public School system.

We have not yet considered whether tenured teachers are entitled to consideration for reassignment. We came close to answering that question in *Mims v. Bd. of Educ.*, 523 F.2d 711, 715 (7th Cir. 1975). The plaintiffs in *Mims* were female civil service employees of the Board who were laid off because of a shortage of funds and sought an opportunity to demonstrate their qualifications after

learning that six men were hired to temporarily fill their positions. *Id.* at 713-15. We found that although "a layoff is less drastic than a discharge and may not require all the procedural safeguards necessary before termination through discharge, [the laid off] plaintiffs had a property interest in their continued employment, not just in their status as civil servants." *Id.* at 715. We stated:

> Plaintiffs at least were entitled to an opportunity to demonstrate that they were capable of performing the work assigned to the six temporary employees. The issue of whether plaintiffs could perform the work, unlike that of the need to cut back due to loss of federal funding, was one on which plaintiffs might have been able to contribute information and valid persuasion, possibly resulting in a temporary continuation of employment.

*Id.*

In *Mims*, however, the plaintiffs, unlike the teachers here, also claimed that they were entitled to a pre-layoff hearing. *Id.* at 714. We found that the Board failed in its duty to establish a procedure by which an employee could obtain review of a layoff decision to ensure that it was not for an impermissible reason or to demonstrate that he or she should have been retained. *Id.* at 715. Therefore, *Mims*, while guiding our analysis, does not provide a definitive answer.

To determine whether the teachers have a property interest that entitles them to an opportunity to be con-

sidered for new vacancies, we look to Illinois law. *See Loudermill*, 470 U.S. at 546-47. Prior to 1995, Section 34-84 of the Illinois School Code provided that "reserve teachers" had various recall rights. A reserve teacher was defined as "a teacher not on administrative payroll, who has a rating of satisfactory or better and whose service is no longer required because of a decrease in student membership, a change in subject requirements within the attendance center organization, or the closing of an attendance center." 105 ILCS 5/34-1.1 (1994). Reserve teachers were given the opportunity to apply for filling new and vacant teaching positions in the school system through a process collectively bargained by the Board and the Union. 105 ILCS 5/34-84 (1994). If a reserve teacher was not selected to fill a vacant position, the teacher would be employed by the Board in a position that was collectively bargained. A certified reserve teacher not selected for a vacancy would be appointed on an interim basis for a teaching position. Reserve teachers also had the right to remain employed by the Board and receive full salary and benefits for a period of 25 school months, after which time they could be honorably terminated from service.[2] *Id.*

---

[2]  Although these protections were removed from Section 34-84, both Appendix H of the parties' collective bargaining agreement and Section 504.2 of the Chicago Public Schools Policy Manual ("Layoff Policy") provide for a retention procedure for teachers whose services are no longer required due to a drop in student enrollment or the closure of an attendance

(continued...)

In 1995, the Illinois School Code underwent a significant revision. All statutory references to reserve teachers, along with their recall rights under Section 34-84, were deleted, and 105 ILCS 5/34-18(31) was added. Section 5/34-18(31) provides in relevant part that:

> The board . . . shall have power . . . to promulgate rules establishing procedures governing the layoff or reduction in force of employees and the recall of such employees, including, but not limited to, criteria for such layoffs, reductions in force or recall rights of such employees and the weight to be given to any particular criterion.

---

[2] (...continued)

center. The Layoff Policy provides that teachers whose services are no longer required are to be given a "notice of removal." Teachers continue to receive full pay and benefits for a limited period of time. Upon notice of removal, the teacher receives a list of all unencumbered vacant positions for which he or she is qualified. During the first thirty school days after notice of removal, the tenured teacher is permitted to interview at schools of his or her choosing without being assigned additional duties. School principals are obligated to interview tenured teachers who apply unless the position is filled before the interview takes place. The Board is also obligated to offer teachers "interim assignments." If the teacher remains in the interim position for more than 60 days, he or she is permanently assigned to that position. Even if the teacher does not have an interim assignment, the teacher may work as a substitute teacher. If after 10 school months the tenured teacher has not been appointed to a permanent position, he or she is honorably terminated.

> Such criteria shall take into account factors in-
> cluding, but not limited to, qualifications, certifica-
> tions, experience, performance ratings or evalua-
> tions, and any other factors relating to an em-
> ployee's job performance.

The Board concedes that "[p]rior to the 1995 amend-
ments, if CPS honorably dismissed or laid off a teacher,
the teacher had a clearly delineated property interest
in continued employment, which was set forth in Sec-
tion 34-84." The Board argues, however, that Section 34-
18(31) is an authorizing statute and does not compel it
to promulgate regulations, and therefore, the teachers
are not entitled to be recalled. The Board also contends
that the teachers cannot have a property interest in a
recall procedure because a procedural safeguard for a
property interest cannot itself create a property interest.

While it is true that Section 34-18(31) is not crystal clear,
it contemplates that the Board will promulgate rules
"governing the layoff . . . *and* the recall of such employees,"
not layoffs alone. (emphasis added); *see also Powell v.
Jones*, 305 N.E.2d 166, 171 (Ill. 1973) (explaining that a
layoff is "not, ordinarily, viewed as a permanent situa-
tion"). The statute further limits the Board's discretion
by requiring it to take various criteria (qualifica-
tions, certifications, experience, performance ratings, and
evaluations) into account.

Although there are no Illinois cases directly on point,
those cases that have examined the relationship be-
tween Sections 34-84, 34-85, and 34-18(31) do not suggest
that tenured teachers do not have a right to be con-

sidered for vacancies, but, rather, that it is now the Board's responsibility, instead of the legislature's, to formulate procedures governing layoff and recall. In *Land I*, the Illinois Appellate Court considered whether tenured teachers who were allowed 10 months to find alternate employment pursuant to the Board's layoff policy but were unable to find new positions during that time were entitled to a hearing prior to being terminated. 757 N.E.2d at 915-16. The court explained that prior to the 1995 amendments, Section 34-84 gave the Board the authority to lay off tenured teachers, but that this authority was subject to "an explicit set of restrictions," which gave "reserve teachers" 25 months to obtain an alternative position before they could be honorably terminated from service. *Id.* at 920. The 1995 amendments "simply eliminated all provisions referring to 'reserve teachers' and added subsection 31 to section 34-18, granting the power to the Board to promulgate its own procedures 'governing the layoff or reduction in force of employees.'" *Id.* After examining the Illinois School Code both before and after the 1995 amendments, the court concluded that "the amendments regarding layoffs were procedural changes, not substantive changes." *Id.*

The court also made two relevant findings. First, it concluded that the layoffs were not governed by sections 34-84 and 35-85 and the hearing procedures contained in those sections. *Id.* Second, the court found that neither the Board's policy nor Section 34-18(31) created a property interest in the teachers' continued employ-

ment, meaning that the notice and hearing procedures required in cases of discharges "for cause" were inapplicable to layoffs. *Id.* at 925. The court emphasized that to require a pre-layoff hearing would "hang an anvil" around the Board's neck. *Id.*

The Illinois Supreme Court affirmed the appellate court's finding that the Board had the authority to lay off tenured teachers.[3] In *Land v. Bd. of Educ. of Chi.*, 781 N.E.2d 249, 256 (Ill. 2002), ("*Land II*"), the Court explained that it had long been established that among the unenumerated powers of the Board was the authority to lay off employees in good faith for lack of work. Prior to 1995, "limits on that power were set out in section 34-84." *Id.* The 1995 amendments did not eliminate or reduce the Board's power. *Id.* "Instead, by deleting the layoff provision from section 34-84 and adding section 34-18(31), the legislature gave the Board the authority to formulate and implement its own procedures regarding layoffs rather than binding the Board to a legislatively mandated procedure." *Id.*

Neither the 1995 amendments nor the Illinois cases construing them suggest that tenured teachers are not entitled to an opportunity to show that they are qualified for vacancies after an economic layoff. Although

---

[3] The Court reversed in part for the trial court to determine whether the Board properly delegated its authority to decide whom to lay off. *Id.* at 261. The Court also noted that the Board's policy was not a "procedure" as provided in Section 34-18(31). *Id.*

in *Land I* the court found that the teachers could not hold on to their positions indefinitely by virtue of being tenured, the court did not decide whether the teachers were entitled to be recalled, as the teachers in that case were placed in a reassignment pool for 10 months and only argued that they could not be subsequently terminated. *Land I*, 757 N.E.2d at 925. Further, *Land I* is not controlling on the question of whether the teachers have a federal constitutionally protected property interest because, although the teachers' rights derive from state law, it is federal law that determines whether those rights constitute a property interest for purposes of the Fourteenth Amendment. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005).

Contrary to the Board's contention, the language used in *Land I* and *Land II* suggests that the Board now has the authority to formulate its own procedure for layoff and recall, not that the Board may simply have no procedure whatsoever. These limits on the Board's discretion, along with tenure, which, as we recognized in *Mims*, gave plaintiffs a property interest in their continued employment and entitled them to an opportunity to demonstrate that they were capable of performing temporary work, give rise to a legitimate expectation that tenured teachers who are laid off will be given the opportunity to show that they are qualified for new vacancies for a reasonable period of time. For, as *Mims* implicitly recognizes, if a "permanent" appointment means anything, it at least means that if vacancies arise during or shortly after a layoff, the teachers who originally held "permanent" appointments should be given

a meaningful opportunity to show that they remain qualified to fill those positions.

And, although it is true that an entitlement to nothing but procedure cannot be the basis for a property interest, detailed procedural requirements are relevant to whether a substantive property interest exists. *Teigen v. Renfrow,* 511 F.3d 1072, 1081 (10th Cir. 2007); *see also Buttitta*, 9 F.3d 1198, 1202-04 (7th Cir. 1993) (holding that a provision in the Illinois Pension Code setting forth the procedure to be followed in determining whether an officer receiving disability benefits should be returned to active duty created in police officers "an interest in being returned to the department for an opportunity to demonstrate their fitness for active duty"); *Deen v. Darosa*, 414 F.3d 731, 735-36 (7th Cir. 2005) (holding that policy directive that gave officers a right to appear before a board to show that they could return to full duty gave officer an interest in an opportunity to show that he could return to full duty). Here, the limits on the Board's discretion found in Section 34-18(31) along with the teachers' right to a "permanent" appointment, give rise to a legitimate expectation that laid-off teachers will be considered for vacancies for a reasonable period of time.[4]

---

[4] The Board also contends that Section 4.5 of the Illinois Educational Labor Relations Act, 115 ILCS 5/4.5, also suggests that tenured teachers have no property interest following an economic layoff. Section 4.5 concerns "subjects of collective bargaining" and states that a decision to lay off employees is

(continued...)

Having found that the teachers have a cognizable property interest, we now turn to the question of what process is due to them. Whether an employee has received all the process that would have been due in connection with his or her termination is a question of federal law. *Lalvani v. Cook County*, 269 F.3d 785, 793 (7th Cir. 2001) ("*Lalvani I*"). The fundamental requirement of due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, (7th Cir. 2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976)). The flexible approach to due process adopted in *Mathews* requires the court to weigh "the significance of the private interest at issue and the risk of an erroneous deprivation of that interest under the procedures employed by the state, against the probable benefits of any additional procedural protections and the state's interest in avoiding the fiscal and administrative burdens that those additional protections would impose." *Lalvani I*, 269 F.3d at 793; *see generally Chaney v. Suburban Bus Div. of the Reg'l Transp. Auth.*, 52 F.3d 623, 627 (7th Cir. 1995) ("We apply the *Mathews* analysis to both the pre-deprivation and post-deprivation phases of [a plaintiff's] case.").

---

[4] (...continued)
a "permissive" subject of bargaining between the Board and the Union. 115 ILCS 5/4.5. Because this case does not concern the Board's duty or lack thereof to bargain with the Union, but instead concerns whether the teachers have a right to be considered for vacancies, Section 4.5 is not relevant to the issue before us.

The teachers contend that they are entitled to a recall procedure.[5] We agree. The teachers should be given a meaningful opportunity to show that they are qualified for new vacancies for a reasonable period of time. *See Buttitta*, 9 F.3d at 1204 (finding that a police officer was given all process due to him because the police department gave him an opportunity to show he was qualified for active duty).

We have previously acknowledged that an employee's interest in retaining his or her job is substantial. *Lalvani I*, 269 F.3d at 793 (citing *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 263 (1987)). The Board contends that the teachers received all of the process that was due to them because it held two job fairs and a résumé workshop and pointed the teachers to a website[6] listing vacancies. However, the Board's contention cannot be squared with the Board's several admissions on the record that it has "no recall procedure in place." The Board simply has not established a procedure whereby laid-off teachers can demonstrate their qualifications for new teaching positions, nor has the Board announced the

---

[5] The teachers also contend that they are entitled to preference for vacancies. But the availability of a post-termination *procedure* by which the teachers can show that they are qualified for vacancies is all that is necessary to satisfy due process. There is no guarantee of a particular substantive outcome.

[6] The district court found that many vacancies were not listed on the website.

criteria to be used in evaluating teachers who apply for teaching jobs. Without *any* procedures for recall, the risk of deprivation to the teachers is significant.

Recognizing that it lacked the institutional competence to define the exact contours of those procedures, the district court found that the Board, in light of Section 34-18(31), would be in a better position to do so. We agree. In enacting Section 34-18(31), the Illinois General Assembly contemplated that the Board would promulgate regulations establishing such procedures, presumably without incurring excessive costs. Requiring the Board to promulgate regulations under Section 34-18(31) gives teachers the benefit of a procedure by which they can demonstrate their qualifications for new positions, without imposing excessive administrative and fiscal costs on the Board.[7]

## B. Scope of Injunctive Relief

We review the district court's entry of preliminary and permanent injunctive relief for an abuse of discretion. *Sierra Club v. Franklin Cnty. Power of Ill., L.L.C.*, 546 F.3d 918, 935 (7th Cir. 2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer

---

[7] This is not an empty formality, as the dissent asserts. While it may turn out that not every laid-off teacher is rehired, the teachers will get the benefit of the recall procedure enacted by the Board pursuant to Section 34-18(31).

irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 129 S. Ct. 365, 374 (2008). The standard for a permanent injunction is the same as for a preliminary injunction except that the plaintiff must show actual success on the merits. *Id.* at 381. Although courts use the terminology "irreparable harm," when the issue is whether to grant a permanent injunction, the burden is on the plaintiff to show that damages are inadequate. *Walgreen Co. v. Sara Creek Prop. Co.*, 966 F.2d 273, 275 (7th Cir. 1992).

The teachers succeeded on the merits. The district court's evaluation of the other factors was also sound. Damages would not adequately compensate the teachers because it would be difficult to place a value on the opportunity to demonstrate their qualifications for vacant positions. The balance of the equities tips in favor of the teachers because they have a substantial interest in remaining employed and requiring the Board to promulgate the rules contemplated by Section 34-18(31) would not impose significant burdens. Nor would requiring the Board to allow the teachers to show that they are qualified for vacancies negatively impact the public.

However, the scope of the district court's injunction should have been narrower. The district court ordered the Board to consult with the Union in promulgating regulations under Section 34-18(31). Although consultation with the Union may expedite the process of promulgating the rules, there is nothing in Section 34-18(31) that requires cooperation with the Union, and we decline to impose such a requirement.

The district court also ordered that the teachers' discharges be rescinded. The teachers concede and we agree that they are not entitled to back pay or to be placed on the payroll going forward. However, the teachers must have some connection to the Chicago Public School system in order for the Board's regulations to apply to them. We do not reverse the decision of the district court in rescinding the discharges, but clarify that the teachers are still considered to be laid-off teachers. As the district court explained, Section 5/34-18(31) contemplates unique rights for laid-off, as opposed to terminated, employees. Rescinding the discharges only allows the teachers to take advantage of the opportunity to show their qualifications for new vacancies for a reasonable period of time. In this context, their "laid-off" status does not implicate past or future payment or benefits.[8]

## III. CONCLUSION

We AFFIRM the district court's finding that tenured, laid-off teachers have a residual property right in the event of an economic layoff. We also direct the court to redraft its injunction to conform with this opinion.

---

[8] The dissent contends that the teachers are now left in "a state of limbo." But as evidenced by the Board's Layoff Policy dealing with school closings, there is nothing unusual about the teachers maintaining a connection to the schools after being laid off. It makes no difference that the teachers are not drawing a salary or receiving benefits.

MANION, *Circuit Judge*, dissenting in part, concurring in part.  The court's decision takes a vague enabling statute giving the Board the power to make recall procedures and turns it into an affirmative right for Union members to have recall procedures. Not only does it give Union members the right to these procedures, it elevates these procedures to the place of property rights, covering them with the guarantees of the Due Process Clause. Therefore, I have two principal points of disagreement with the court's decision. First, neither the statute nor the surrounding conditions that the court's opinion alludes to gives the Union members the right to recall procedures. Second, even if the statute provided the Union members with the right to recall procedures, a person's right to certain procedures is not itself a property right that the Due Process Clause protects. *Wallace v. Robinson*, 940 F.2d 243, 246-47 (7th Cir. 1991) (en banc) ("Promises of particular procedures [ ] do not create legitimate claims of entitlement.").

I.

For reasons not in the record, the Union never negotiated with the Board to secure recall rights in the case of an economic layoff. It was not an oversight, since it did negotiate for and secure recall rights in the case of non-economic layoffs. When an economic layoff came around last summer the Union filed a grievance, claiming the layoff violated its contract with the Board. The arbitrator disagreed, finding that the Board complied with the collective bargaining agreement. While

the Union appealed the arbitrator's decision, it also took its case to federal court. It didn't claim that the layoffs violated the contract or deprived its members of their due process rights. Rather, it claimed that its members were entitled to recall procedures from the layoff and that the Board violated their due process rights by not creating them. It wanted to make sure that every time a position opens up, laid-off teachers would—in the words of the district court—have "a foot in the door." *Chicago Teachers Union v. Bd. of Educ. II*, 2010 WL 3927696, at *9 (N.D. Ill. 2010). Normally these procedures would be included in a collective bargaining contract, but again the Union never negotiated for them. So, the Union argued that although the procedures were not included in the collective bargaining agreement, they were nevertheless guaranteed to its members through the enabling statute that gives the Board the power to create these recall procedures. The district court agreed and this court affirms, finding the Union members have a property interest in yet-to-be-created recall procedures that the Due Process Clause protects.

The Due Process Clause protects property interests. To say someone has a property interest is to say they have a legitimate claim of entitlement, that is, something more than "an abstract need or desire" and "more than a unilateral expectation." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 765 (2005) (quotation omitted). Such an interest cannot be vague, transitory, or uncertain; it must be affirmatively created, explicit, and secure. *Burell v. City of Mattoon*, 378 F.3d 642, 647 (7th Cir. 2004); *Reed v. Village of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1983).

In other words, there must be a "legally enforceable right." *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009). And to have such a right, there must be "explicitly mandatory language" linking "specified substantive predicates" to prescribed outcomes. *Miller v. Crystal Lake Park Dist.*, 47 F.3d 865, 867 (7th Cir. 1995).

The Union argues that its members have a right to the recall procedures contemplated in Section 5/34-18(31). The district court read "5/34-18(31) as vaguely providing a property interest in some sort of retention procedure." *Chicago Teachers Union*, *supra* *8. Here, the court's opinion does not rest on the statute alone, which it notes is "not crystal clear." Op. at 12. Rather, in two ways it finds a right to recall procedures: first, in the limits Section 5/34-18(31) places on the Board's discretion, and second, in the residual and undefined interest the members have in their jobs after being laid off. Op. at 16. But neither a "vague" statute alone, nor a "vague" statute plus some residual interest in a person's former job, gives the Union members a right to recall procedures. The Supreme Court is clear on that point: "Nor can someone be safely deemed 'entitled' to something when the identity of the alleged entitlement is vague." *Gonzales*, 545 U.S. at 763.

Section 5/34-18(31) does not provide the Union members with an entitlement. It is an enabling statute, an authorizing statute that gives the Board the power to create a recall process. It says that the Board "shall have power" "[t]o promulgate rules" for layoffs and recalls; it then provides criteria to guide the formation of

these rules. 105 ILCS 5/34-18(31). The statute does not specify what recall procedures *must* be made or that they are required in all cases, just that the Board has the power to create them. In other words, the Board may create recall procedures but is not required to do so. That is the nature of an enabling statute. *See* Norman J. Singer, 3 *Sutherland Statutory Construction*, §§ 57:1 *et al.* (7th ed. 2008) (discussing enabling or authorizing statutes and their attributes). As the court notes, the Board has not chosen to create procedures for recall during an economic layoff.

Significantly, though, the Board has enacted recall procedures when teachers are laid off because of a school closing. These detailed procedures, including ten months of pay and benefits, are discussed in footnote 2 of the court's opinion. While the Board has enacted recall procedures when a school closes, there may be good reason for the Board to exercise its authority and choose *not* to enact such procedures when an economic crisis compels layoffs. In an economic crisis, the Board may want as much flexibility as possible and choose to avoid the cumbersome task of determining how to sift through 2,000 laid-off applicants vying for the 200 jobs that may open up during the school year—not to mention the grievances that would naturally follow. It may prefer to have everyone apply and let the principals make their own hiring decisions. Regardless of the reasons, there is nothing in the enabling statute that specifies that recall procedures are required.

Not surprisingly, we have previously dealt with the question of whether an enabling statute creates a

property right, notably in *Hohmeier v. Leyden Community High Schools Dist. 212*, 954 F.2d 461, 463-64 (7th Cir. 1992). There, the school board had a "duty" to "adopt and enforce all necessary rules for the management and government of the public schools of their district." *Id.* We held that although the Board could create a property entitlement under the statute, it had not. Like Section 5/34-18(31), the statute in *Hohmeier* had criteria for the Board to use when making its rules. In contrast to the court's holding today, there we found that the criteria "suggests that the policy is intended to guide the internal management of the school system, *rather than to create enforceable rights against the district*." *Id.* at 465 (emphasis added). Further, in *Hohmeier*, as here, the statute gave the Board the discretion to determine what rules to promulgate. *Id.* And we held that since there was no binding obligation that the plaintiffs could enforce, there was no property interest for the Due Process Clause to protect. *Id.* at 464.

Looking at the text of Section 5/34-18(31), we should arrive at the same conclusion. The language at issue here is, as the district court put it, "vague"; it is uncertain and lacks binding force. Undeterred, the court notes that while the statute is "not crystal clear," the limits it places on the Board's discretion help create an expectation for Union members in recall procedures. In its words:

> Here, the limits on the Board's discretion found in Section 34-18(31) along with the teachers' right to a "permanent" appointment, give rise to a legitimate expectation that laid off teachers will

be considered for vacancies for a reasonable
period of time.

Op. at 16. But the criteria listed in Section 34-18(31)
do not create a right, nor do they limit the Board's discre-
tion. When formulating the rules, the Board is supposed
to "take into account factors including, but not [ ] limited
to, qualifications, certifications, experience, performance
ratings or evaluations, and *any other factors relating to
an employee's job performance*." *Id.* (emphasis added). This
legislative criteria does not give tenured teachers a right
to recall procedures. The statute does not provide a
guarantee that after any layoff the most qualified or most
experienced will be recalled; all it provides is that *if* the
Board makes such recall rules, it will take into account
factors that include qualifications and experience and
"any other factors relating to an employee's job perfor-
mance." 105 ILCS 5/34-18(31). When a statute limits the
decisionmaker's discretion so that a prescribed outcome
will follow from certain factors, then a right is created.
*Miller*, 47 F.3d at 867; *Wallace*, 940 F.2d at 247. The mere
fact that the Board will consider a non-exclusive list of
things, primarily focused on performance with no
mention of tenure, does not mean that a certain out-
come will follow.[1] The Union members can't reasonably

---

[1] Further, the context of this statute cuts against any inference
in favor of tenure rights. We have dealt with the changes
made to this statute in several cases over the years. *Shegog v. Bd.
of Educ.*, 194 F.3d 836, 837 (7th Cir. 1999); *Hearne v. Chicago Bd.
of Educ.*, 185 F.3d 770 (7th Cir. 1999); *Pittman v. Chicago Bd. of*
(continued...)

read the statute and infer—from the fact that the Board will consider qualifications, certifications, and job performance when making recall procedures—that they have a substantive entitlement to recall procedures. *See Gonzales*, 545 U.S. at 765 ("If she was given a statutory entitlement, we would expect to see some indication of that in the statute itself."). And "[a] misunderstanding of one's entitlements, even if reasonable, does not enlarge those entitlements." *Upadhya v. Langenberg*, 834 F.2d 661, 665 (7th Cir. 1987).

There are two other components to the court's finding that the teachers have the right to recall procedures: first, its analysis of the Illinois case law interpreting the statute; and second, the declaration that teachers have a right to a permanent appointment, with some residual interest after termination. Under the first, the court concludes its examination of *Land I* and *Land II* by noting:

> Neither the 1995 amendments nor the Illinois cases construing them suggest that tenured teachers are *not* entitled to an opportunity to show that they are qualified for vacancies after an economic layoff.

Op. at 14 (emphasis added). That statement, indeed much of the court's reasoning, inverts the proper analysis. It is not that the law must not take away a right; rather,

---

[1] (...continued)
*Educ.*, 64 F.3d 1098 (7th Cir. 1995). And in *Hearne*, we discussed how the changes aimed only at Chicago Public Schools—which at the time this statute was passed "was in the throes of an education crisis"—eroded the teachers' tenure rights. *Hearne*, 185 F.3d at 772-73.

the law must guarantee it. Nor is it the duty of the Board to show that the teachers do not have a particular right; rather, it is incumbent on the Union to show that its members have one. And to have such a right the members must have much more than an expectation of something that the Illinois cases have not taken away. The Union members must show that "state law has affirmatively created an expectation that a particular employment relationship will continue unless certain defined events occur." *Burell*, 378 F.3d at 647 (quotation omitted). That has not happened here.

Second, the court repeatedly invokes the concept of tenure and the case of *Mims v. Board of Education*, 523 F.2d 711, 715 (7th Cir. 1975), as suggesting that the Union members have a residual right to recall procedures. Op. at 9, 14-15. This suggestion is misguided. First, rights of this sort do not come from federal case law; "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Gonzales*, 545 U.S. at 758; *see also Goros v. County of Cook*, 489 F.3d 857, 860 (7th Cir. 2007) ("State law defines property; federal law defines the process that is due." (quotation omitted)). Second, in *Mims* the plaintiffs were film servicers who were laid off after the program was cut, but before they were laid off there were still some temporary jobs available in dismantling the program, and the plaintiffs were not given a chance to demonstrate they were capable of doing the temporary positions. *Mims* stands for the unremarkable proposition that due process was not followed when the plaintiffs were laid off without a hearing.

*Mims*, 523 F.2d at 715. That case has no bearing on what rights the Union members have under *this* statute to recall procedures. And that case does not suggest—let alone hold—that under Illinois law *after* a person is laid off he has some residual rights in his former job.

Here, the teachers are all laid off; in the Board's words, they have been honorably discharged. The point is they no longer have a job, and the process they are owed under the Due Process Clause has been honored—the teachers have not claimed they were laid off without due process. No property rights followed the teachers out the door. *Mims* does not suggest that once an employee has been terminated she retains some residual rights in her former employment. No case holds that. To be clear, the teachers have a property interest in their jobs, but once they lose their jobs, and the process that attaches to it is honored, they have no more rights that the Due Process Clause protects.[2]

---

[2] This point is clear in *Land I,* which the court discusses at length. There, the Illinois Court of Appeals was looking at whether a traditional right to continued employment existed in the language of Section 34-18(31), and it held it was not there:

> The plaintiffs have failed to cite to any authority—and we are unable to locate any—to support their claim that both section 34-18(31) of the Code and the Board's layoff policy created a property interest in their continued employment.

*Land v. Bd. of Educ. of City of Chicago*, 757 N.E.2d 912, 925 (Ill. App. Ct. 2001), *rev. in part on other grounds*, 781 N.E.2d 249

(continued...)

The court's instructions on remand also illustrate this fact. Under the court's direction, the layoffs are rescinded, yet the teachers do not get back pay or get placed back on the payroll; they are not contractual employees who enjoy salaries and benefits. Op. at 18-19. They have an uncertain and undefined connection to the schools; they're just connected with the school in a state of limbo—undefined by statute or contract, the product of judicial fiat. Since neither Section 34-18(31) nor the teachers' contract creates such a residual right which would define a member's status, the court must order one. So, on remand, the teachers now have the opportunity—along with every other applicant—to show their qualifications for new vacancies. Even after rescinding the discharges, that "opportunity" is not a right, because there is no guarantee that the teacher will be rehired. They just have a chance, like everyone else. *See Reed*, 704 F.2d at 948 (noting "property is what is securely and durably yours . . . , as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain"). Nothing more.

In sum, neither the statute, nor anything else the court cites to, gives the Union members a legitimate claim to recall procedures in the case of an economic layoff. Thus, I respectfully submit that the court has erred in finding such a right.

---

[2] (...continued)
(Ill. Sup. Ct. 2002). In *Land I*, once the employee was terminated, that was it: he had no more property rights.

II.

My second point of disagreement is more fundamental: Even if the Union members' expectations from a vague statute could create a right to recall procedures, recall procedures are not substantive property rights. From the briefs and the district court's order, the Union's demand was minimal. The Union wants to ensure its members have a chance to show principals their qualifications—they want special access, or in the words of the district court, they want a "foot in the door." They want a process for hiring teachers that will favor the laid-off tenured teachers.

Here, the court finds that the Union members have a right to recall procedures, the ones that the Board is empowered to create under Section 5/34-18(31) but has not yet created. The court holds that these yet-to-be-created recall procedures constitute a property right that the Due Process Clause protects. So, to ensure that the Union members are not deprived of their property (i.e., the recall procedures) without due process, the court has ordered the Board to create recall procedures (which is, again, the so-called property). The logic is circular. A process (here, the recall procedures) is not an end in itself. The Due Process Clause protects the property right, not the process. It bears noting the Supreme Court's position on the danger of conflating property rights with procedure:

> The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived

> except pursuant to constitutionally adequate procedures. *The categories of substance and procedure are distinct.* Were the rule otherwise, the Clause would be reduced to a mere tautology. *"Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty.*

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (emphasis added). Illustrating the Supreme Court's point, the court's opinion notes: "Without *any* procedures for recall, the risk of deprivation to the teachers is significant." Op. at 19. But what is the deprivation that the teachers would suffer? It would be nothing more than their right to "recall procedures." And procedures are not protected property rights: "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

By looking at the statute this way, the court conflates the property with the process. Our precedent is clear on this point: "Promises of particular procedures [ ] do not create legitimate claims of entitlement." *Wallace*, 940 F.2d at 248. A statute that merely provides procedures does not include a substantive right. *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir.1989) ("It is by now well-established that in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon the procedural guarantees of state law or local ordinance."). And "a contract that creates merely

a right to procedure does not create a property right within the meaning of the due process clause." *Campbell v. City of Champaign*, 940 F.2d 1111, 1113 (7th Cir. 1991) (quotation omitted). Here, the Union doesn't even have an articulated procedure—it has only the hope of a procedure. That is not the stuff of property rights.

And even the court's remedy does not give a substantive entitlement; on remand all the teachers are given is a procedure: the court requires that their names be placed on a list. But having your name on a list is not a property right. It is a formality. *Olim*, 461 U.S. at 250 (noting a property right is not "the right to demand needless formality").

III.

The Union failed to bargain over and secure recall procedures for its members when there is an economic layoff. Faced with this reality after the layoff, it has tried to create a property right out of the statute that empowers the Board to make such procedures. The district court and this court have acquiesced, finding that the Due Process Clause protects what amounts to a vague and amorphous expectation of recall procedures, but the Due Process Clause protects neither vague expectations nor procedures. The substance and form of recall procedures during an economic layoff should be resolved at the bargaining table; it is not for us, fifteen years after the statute was passed, to remedy that by calling the expectation of "recall procedures" property rights and placing them under the protection of the Due Process

Clause. Accordingly, I respectfully dissent with respect to the finding a property right, and concur with the judgment modifying the district court's injunction.[3]

---

[3] I do agree with the court's opinion that the district court overstepped its bounds by ordering the Board to negotiate with the Union over the substance and form of recall procedures. To the extent that the Court's opinion modifies the district court's order on that point, I fully concur.